UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHRISTOPHER DANUSIAR**, | No: 20-cv-1477 (PKC) |
| Plaintiff, | |
| -against- | |
| **AUDITCHAIN USA, Inc.,** a Delaware., corporation, **MATREYA.IO, LLC** a Delaware limited liability corporation, and **JASON M. MEYERS**, individually | |
| Defendants. | |

## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

STEAMER HART LLP
Bruce G. Hart, Esq.
30 Park Avenue, 20th Floor
New York, NY 10016
Tel: (917) 680-2722
Fax: (212) 500-9793

Defendants Auditchain USA, Inc. ("Auditchain"), Matreya.io, LLC ("Matreya") and Jason M. Meyers ("Meyers"), respectfully submit this memorandum of law, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), in support of their motion to dismiss the First, Second and Fourth Counts alleged in the First Amended Complaint ("Complaint") of Christopher Danusiar ("Plaintiff"), and to dismiss Defendants Matreya and Meyers from the Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

In his Complaint, Danusiar alleges four Counts for (1) violation of the Illinois Wage Payment and Collection Act ("IWPCA"), (2) violation of the New York Labor Law ("New York Labor Law"), § 190 *et seq.*,[2] (3) breach of contract and (4) breach of the implied covenant of good faith and fair dealing.

Specifically, in the Complaint, Danusiar, who describes himself as a "highly-regarded business, technology and global transformation leader with over thirty years of relevant experience (Compl., ¶ 12), entered into the employment agreement ("Agreement") with the "Company" on September 5, 2018 with the title of "Director and Chief Executive Officer" of Auditchain (Compl., ¶20)[3]; the "Company" breached the Agreement (Compl., ¶¶31-37); Plaintiff terminated the Agreement for "Good Reason" on or about February 18, 2019, accelerated his termination of the Agreement for "Good Leave" effective March 8, 2019; (Compl.,¶ 41); the "Company" failed to pay him his salary for three months prior to his

---

[1] Auditchain denies all Danusiar's allegations, including Danusiar's Third Count. Auditchain maintains that Plaintiff improperly terminated the Agreement for "Good Cause" and would have otherwise been terminated for Cause.

[2] Although not mentioned in the First Amended Complaint, the provisions cited by Plaintiff are found in Section 6 of the New York Labor Law.

[3] Plaintiff tries to rope in Matreya in his Complaint by defining "Company" in his Complaint to include both Auditchain and Matreya. This is in direct contradiction of more specific documentation, that being the Agreement itself, which defines the "Company" only as applying to Auditchain. *See* Hart Dec., Exhibit 1.

1

termination, he claims also to be owed in excess of $16,500 in reimbursable business expenses as well as a $100,000 bonus due him due to the launch of Auditchain's product within 120 days of his termination (Compl., ¶¶ 45-55), as well as $15,000 in employment taxes "not withheld" by the "Company" in violation of Internal Revenue Code (Compl.,¶ 58). With respect to the tax issue, it is clear that Plaintiff admits he received the taxes in question, but did not remit same to the IRS and seeks the "Company" to pay them for him.

Plaintiff's claims, conclusory in nature as they are, in substance are breach of contract claims, which have nothing to do with either the IWPCA or New York Labor Law.

The Agreement is governed by New York law according to its terms. It is well established that when there is a choice of law provision in an agreement, it is controlling. Thus, in this case, New York law controls and Plaintiff cannot state a claim for violation of IWPCA, an Illinois law. Further, it is also well established New York law that when the essence of a claim is for common law breach of an employment agreement, plaintiff has no viable claim under Article 6 of the New York Labor Law. In addition, as "Chief Executive Officer" of Auditchain, neither wage statute would cover Plaintiff's claims in any event as he was an executive.

Likewise, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative breach of contract claim, and must be dismissed.

Furthermore, Meyers is **not** a party to the Agreement; he signed the Agreement on behalf of Auditchain as its then *interim* Chief Executive Officer. The law is well established that an individual who signs an agreement in his capacity as a corporate representative does not assume liability for the Company's breach of said agreement and is not subject to personal liability. Meyers should be dismissed from the action in its entirety with prejudice.

Finally, Matreya is not a party to the Agreement. Plaintiff held no role with respect to Matreya, and Plaintiff makes no allegations of Alter Ego liability in the Complaint. Matreya is not mentioned in the Agreement. Therefore, Matreya is not in privity of contract with Plaintiff and must also be dismissed from this action in its entirety.

## ALLEGED FACTS

On April 16, 2020, Plaintiff filed a four-count Complaint against Defendants Auditchain, Matreya and Meyers. Auditchain, a company that is developing a "decentralized continuous audit and reporting system …." (Compl., ¶10.) A copy of the complaint is attached to the Declaration of Bruce G. Hart, dated May 31, 2020 ("Hart Dec.") as Exhibit 1. Plaintiff alleges that on August 17, 2018 he entered into the Agreement with the "Company"[4] – defined in the Agreement as only "Auditchain - for the term of two years" effective September 5, 2018 (Compl., ¶¶20, 25; Agreement, p. 2. (A copy of the Agreement is attached to the Complaint and included in the Hart Dec as part of Exhibit 1).)

Plaintiff further states that his "title was Director and Chief Executive Officer." (Compl., ¶20.) Plaintiff allegedly was to receive compensation consisting of, among other things, "$225,000 from September 2018 to September 2019 and $325,000 or more every year thereafter.," "reimbursements for business expenses" a discretionary bonus "equal to a minimum of $100,000" if Auditchain concludes a token generation event or "TGE" within 120 days of his termination (Compl., ¶¶ 44, 48, 51, and 53). In total, Plaintiff asserts that he is entitled to a total of $290,151.23 from Defendants as a resulted of his alleged "Termination For Good Reason." (Compl., ¶ 54.)

The Agreement contains various termination and notification provisions

---

[4] The Complaint intentionally conflates Matreya and Auditchain as one "Company" (Compl., ¶1.)

3

depending on whether Plaintiff has been terminated for any reason by Auditchain, "Without cause or for Good Reason by Plaintiff. termination provisions of the Agreement. (Hart Dec. Ex. 1, Agreement, p 4.)

The rest of the Complaint contains claims of Defendants' alleged wrongful actions. For example, without any evidence, Plaintiff claims that Meyers "exaggerated the value" of Auditchain and Matreya to investors and engaged in SEC violations by selling unlawful Simple Agreement for Future Tokens ("SAFT") to United States-based investors. (Compl., ¶¶31-32.)

Without providing any details or evidence, Plaintiff claims that Meyers dissipated investor assets on apartments in New York and Switzerland, and vague assertions of "lack of transparency" and "apparent impropriety in conjunction with the Agreement. (Compl., ¶37.)

In his complaint, Plaintiff alleges four counts: (1) violation of the Illinois Wage Payment and Collection Act; (2) violation of Article 6 of the New York Labor Law; (3) breach of contract; and (4) violation of the Implied Covenant of Good Faith and Fair Dealing.

Count One contains only Plaintiff's bare allegations that Defendants violated the IWPCA by failing to pay him "wages" "semi-monthly" and for failure to "by reason of the foregoing, Defendants breached the Agreement and that Plaintiff sustained as a result. (Compl., ¶¶59-70.)

In his Second Count, Plaintiff alleges Defendants violated Article 6 of the New York Labor Law, by failing to pay and withholding "wages" by the date of his regular payday following his termination of employment and that he is entitled to liquidated damages under §198(1-a). (Compl., ¶¶72-83.) Count Three is for breach of the Agreement. He seeks his salary allegedly due, his alleged bonus and "$15,000" for taxes paid directly to him and not

withheld for the IRS. In essence, Plaintiff seeks Defendants to pay his taxes, that he admittedly received and did not turn over to the IRS. (Compl., ¶¶85-90.) Finally, Count Four is for an alleged violation of the Implied Covenant of Good Faith and Fair Dealing based on Defendants failure to pay Plaintiff amounts due under the Agreement, and because Defendants induced him to enter the Agreement by promising to pay him the amounts under the Agreement, and now claim he is not entitled to such sums. (Compl., ¶¶ 91-100.)

For the reasons stated below, Plaintiff's First, Second and Fourth Counts should be should be dismissed with prejudice for failure to state a cause of action. Furthermore, Defendants Matreya and Meyers should be dismissed from the Complaint in their entirety with prejudice.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Igbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly,* 550 U.S.

at 557).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a district court may consider 'only the complaint, ... any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily.'" *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d, 344, 353 (S.D.N.Y. 2014) quoting *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012)). **"Allegations in the complaint that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness."** *Id.* (*citing Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n. 1 (2d Cir. 2013).

As further discussed below, Plaintiff's First, Second and Fourth Counts fail to state a cause of action against Defendants and, therefore, must be dismissed with prejudice. Likewise, Matreya and Meyers should be dismissed from Count Three and the action in their entirety.

## ARGUMENT

**I. PLAINTIFF CANNOT STATE A CAUSE OF ACTION UNDER THE IWPCA BECAUSE HIS EMPLOYMENT AGREEMENT SPECIFICALLY STATES THAT NEW YORK LAW, NOT ILLINOIS LAW, IS CONTROLLING.**

Plaintiff's First Count, like all of his other Counts, is both conclusory in nature and, in substance a contract claim. Specifically, in the Complaint, Plaintiff relies on the provisions of the Agreement to assert that Defendants are in breach and seeks damages as a result. The Agreement clearly states that it is to be interpreted under New York law. (Hart Dec., Exhibit 1.) The law in the Sixth Circuit (which covers Illinois) is clear: When an employment agreement has a choice of law provision *other* than Illinois, the law of the chosen jurisdiction controls. In this case, because the Agreement has a specific New York choice of law provision, New York

law, and not Illinois law is controlling. *See Lubinski v. Hub Grp. Trucking, Inc.*, No. 2:14-cv-02843, 2015 U.S. Dist. LEXIS 177809, 2015 WL 10732716, at*4-5 (W.D. Tenn. Sept. 22, 2015), *aff* 690 Fed. Appx. 377 *; 2017 U.S. App. LEXIS 10522 **; 2017 FED App. 0316N (6th Cir.); 2017 WL 248072.

In *Lubinski*, plaintiff, an Illinois citizen, had an employment contract with defendant that included a Tennesee choice of law provision. Plaintiff sued under the IWPCA, because he was an Illinois citizen. Upon motion of defendant, the Northern District of Illinois transferred the case to Western District of Tennessee. (*Id*. at *378.) The district court agreed with defendant and dismissed plaintiff's complaint, finding that: (1) Tennessee law controlled and, under Tennessee law, plaintiff could not state a claim for violations of the IWPCA, an Illinois law; (2) the contract's choice-of-law provision was not equivalent to an unenforceable waiver of plaintiff's rights; and (3) plaintiff had not claimed unenforceability of the contract in his complaint, but, even if he had, plaintiff could not show that the contract violated public policy. (*Id.*) The United States Court of Appeals for the Sixth Circuit affirmed the lower court's decision. (*Id.* at *379.)

The same situation is evident here. Plaintiff sued under an employment agreement that has a specific New York choice of law provision. The action was filed in New York. Therefore, Plaintiff is not covered by IWPCA, and his dispute with Defendants is governed by New York law.

Consequently, Count One of the Complaint, alleging a violation of the IWPCA should be dismissed with prejudice.

7

## II. PLAINTIFF CANNOT STATE A CAUSE OF ACTION FOR DEFENDANT'S ALLEGED VIOLATIONS OF THE NEW YORK LABOR LAW (ARTICLE 6)

Plaintiff's Second Claim for Relief, is also in substance a contract claim. Specifically, in his complaint, Plaintiff alleges that Defendants, by breaching the Agreement, are liable under the New York Labor Law. In specific, Plaintiff claims Defendant violated Article 6 of the NYLL by failing to pay him the compensation due and owing when he resigned from Auditchain. (Compl., ¶¶ 72-83.)[5]

It is well established that when the essence of the claim presented concerns a common law breach of employment contract, there is no viable claim under Article 6. *See Monagle v. Scholastic, Inc.,* No. 06 Civ. 14342, 2007 WL 766282, at *2 (S.D.N.Y. March 9, 2007); *see also Wiggins v Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 241-42 (S.D.N.Y. 2011).

In his Second Claim for Relief, Plaintiff asserts that he is entitled to relief under Sections 190, 191 and 198 Article 6. (Compl., ¶¶ 76, 78, 83.) He does not mention Section 193, which would apply to improper "deductions" from his wages. Moreover, Section 198 does not provide Plaintiff with a "freestanding right to relief" and "may not be invoked when the claim is in substance a contract claim." *See Malinowski v. Wall Street Source, Inc.*, No. 09 Civ. 9592, 2012 WL 279450, at *2-3 (S.D.N.Y. Jan. 31, 2012); *Fin. Techs. Int'l, Inc. v. Smith*, 247 F. Supp. 2d 397, 413 (S.D.N.Y. 2002). Finally, Plaintiff, as an executive, cannot state a claim under other (not mentioned in Plaintiff's complaint) provisions of Article 6. *See Moras, supra,* 2012 WL

---

[5] Plaintiff's responsibilities per the Agreement were as follows: "[e]xecutive shall serve as Chief Executive Officer to Auditchain and serve as a member of the board of directors ("Board"). ***Executive shall oversee the day to day activities of all operations of the Company and have the duties, authorities and responsibilities of persons in similar capacities in similarly sized companies."*** (Hart Dec., Ex.1, Agreement, p.1.*)* Setting up a payment system is a standard corporate responsibility of a person in Plaintiff's position as CEO. He was, in effect, his own paymaster. In other words, as CEO, he has only "thy self to blame" for not ensuring he received his agreed-to compensation.

6700231, at *11 (*citing Pachter v Bernard Hodes Group, Inc*., 10 N.Y.3d 609, 616 (2008) ("[E]mployees serving in an executive … capacity do not fall under Section 191 of the Labor Law"). As a result, Plaintiff's Second Claim for Relief should be dismissed with prejudice.

### A. Plaintiff Cannot State a Cause of Action Under Section 193

In his Complaint, Plaintiff, without citing the particular Section of Article 6, argues that defendants' alleged "did not pay Plaintiff any of his earned and unpaid compensation upon termination of his employment. (Compl., ¶77.) Such action, if true, would be a possible violation of Section 193. Such claim must fail because it is well established by the courts in New York that Section 193 "has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages." *Monagle,* 2007 WL 766282, at *2; *Wiggins,* 829 F. Supp. 2d at 242; *Ketter v. Fleming,* 820 N.Y.S.2d 348, 350 (3d Dep't 2006) (general allegation of failure to pay wages due does not state a claim under Section 193 absent allegation of "any specific deduction" from wages) (citing *Slotnick v. RBL Agency*, 271, A.D.2d 365, 366, 706 N.Y.S.2d 431 (1st Dep't 2000)); *see also Wiggins,* 829 F. Supp. 2d at 242. Here, Plaintiff is *not* complaining about any *specific* deduction of wages, but rather the withholdings of wages or severance benefits allegedly due to Plaintiff under the Employment Agreement. (Compl., ¶¶ 72-83.) Plaintiff's complaint is devoid of any factual allegations concerning a specific deduction which he claims was made in violation of Section 193. Thus, Plaintiff fails to state any viable claim under Section 193.

### B. Section 198 Does Not Provide a Right for Relief To Plaintiff

Plaintiff cannot state any claim for relief under Section 198 of Article 6 because it does not supply a freestanding right to relief. *Monagle,* 2007 WL 766282, at *2 (Section 198 "provides no substantive cause of action at all"); *see also Fin. Techs. Int'l, Inc,* 247 F. Supp.

2d at 413 ("[t]he remedies of section 198 may not be invoked when the claim is in substance a contract claim to enforce the payment of obligations other than statutory wages"); *see also Gottlieb v.Kenneth D. Laub & Co.*, Inc. 82 N.Y.2d 457, 462 (1993) (finding that Section 198 does not provide a substantive claim for relief and that it was not intended "to provide any remedy whatsoever for the successful prosecution of a common-law civil action for contractually due remuneration…"). Thus, unless Plaintiff can bring a claim under Article 6 (which he cannot) he is not entitled to the remedies provided in Section 198.

Plaintiff does not attempt and, in fact, cannot seek relief under Section 198 (1-c), "which, unlike §198, is a source of a substantive right." *See Malinowski*, 2012 WL 279450, at *2-3. However, Section 198 does not apply to executives such as Plaintiff.[3] N.Y. LAB. LAW § 198–c (McKinney 2011) ("This section shall not apply to any person in a bona fide executive ... capacity whose earnings are in excess of nine hundred dollars a week."); *see also Pachter,* 10 N.Y.3d at 615; *Monagle,* 2007 WL 766282, at *2.

Here, Plaintiff was employed as Auditchain's Director and Chief Executive Officer, and was to "oversee the day to day activities of all operations of the Company and have all the duties, authorities and responsibilities of persons in similar capacities in similar sized companies." (Compl., ¶ 26.) Similarly, as an executive, Plaintiff cannot seek any relief under Section 191 of Article 6. N.Y. Lab. Law § 191 (McKinney 2011); *see also Pachter v. Bernard Hodes Grp. Inc.*, 10 N.Y.3d 609, 616, 861 N.Y.S.2d 246, 891 N.E.2d 279 (2008) ("employees serving in an executive ... capacity do not fall under Section 191 of the Labor Law"); *Gottlieb*, 82 N.Y.2d at 464, 605 N.Y.S.2d 213, 626 N.E.2d 29; *Malinowski*, 2012 WL 279450.

Therefore, Plaintiff is not entitled to any relief under Article 6 and his Second

Claim for Relief should be dismissed with prejudice.

### III. PLAINTIFF'S FOURTH CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED AS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM

Plaintiff's Count Four alleging a breach by Defendants of the Implied Covenant of Good Faith and Fair Dealing is duplicative of his claim in Count Three for Breach of Contract and should be dismissed pursuant to undisputed New York law.

New York law implies a duty of good faith and fair dealing into every express contract. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (*citing U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 64 (2d Cir. 2004)). However, "breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). "New York law... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id*. at 81; see also *Funk v. Allstate Ins. Co.,* No. 13-CV-5933 (JS), 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) (holding that a breach of good faith and fair dealing "must be premised on a different set of facts from those underlying a claim for breach of contract"). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 125 (2d Cir. 2013) (*citing L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011)); *R.I. Island House, LLC v. North Town Phase II Houses, Inc.,* 51 A.D.3d 890, 896, 858 N.Y.S.2d 372 (2d Dep't 2008); *Grazioli v. Encompass Ins. Co.*, 40 A.D.3d 696,697 , 835 N.Y.S.2d 682 (3d Dep't 2007); *see also Paterra v. Nationwide Mut. Fire Ins. Co.*, 38 A.D.3d

511, 512-13, 831 N.Y.S.2d 468 (2d Dep't 2007) (claim predicated on alleged breach of implied duty of good faith is duplicative of breach of contract).

Here, Plaintiff's claim for breach of the Implied Covenant of Good Faith and Fair Dealing is duplicative and based on the same facts as his Count Three Breach of Contract claim. In both counts, Plaintiff states the identical assertion that Defendants "[u]nder the executed Employment Agreement, Plaintiff is entitled to $290,151.23 for Termination for Good Reason fees, $100,000 for the AUDT TGE bonus, $72,914.29 for unpaid wages and reimbursement for business expenses incurred, and approximately $15,000 for employment taxes not withheld by the Company in violation of the Internal Revenue Code." In both counts, Plaintiff contends that he fully performed his duties under the Agreement, and Defendants have refused to pay him his compensation due. (*Compare* Compl., ¶¶ 85-89 *with* Compl., ¶¶91-99) (¶86 is *identical* to ¶93 and ¶89 is *identical to* ¶99.). Plaintiff has not claimed any independent tort outside the four corners of the contract.

For this reason, Count Four should be dismissed.

**IV.    Defendants Meyers and Matreya Are Not Proper Parties And Should Be Dismissed From Count Three and This Action in its Entirety With Prejudice.**

Finally, Defendants Meyer and Matreya were wrongfully included in Count Three, which amounts to a breach of contract action between Plaintiff and Auditchain, and therefore should be dismissed with prejudice from this action. With respect to Meyers, he signed the Agreement in his capacity as CEO of Auditchain and ***not*** in his individual capacity. "Under New York law, 'it is well-settled that an individual who signs a contract on behalf of a corporation, indicates her representative capacity on the contract, and exhibits no intention to assume personal liability for the corporation's breaches is not subject to personal liability.'" *Malinowski v. Wall Street Source, Inc, et al,* 09 Civ. 9592 (PAE), 2012 U.S. Dist. LEXIS 11575 (S.D.N.Y. Jan. 31, 2012) (*citing San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d

104, 128 (S.D.N.Y. 2010) (quoting *Hudson Venture Partners, L.P. v. Patriot Aviation Grp., Inc.*, No. 98-cv-4132, 1999 WL 76803, at *6 (S.D.N.Y. Feb. 17, 1999)).

On the last page of the Agreement attached to the Complaint, the Agreement at issue here explicitly states that the Agreement is between Chris Danusiar and Auditchain USA, Inc. (Hart Dec., Exhibit 1). The signature line denotes that Jason M. Meyers was to sign on and behalf of Auditchain. It does not state that he was signing in his individual capacity or on behalf of Matreya.

Plaintiff makes no claim suggesting any intent or commitment by Meyers to assume personal responsibility for Auditchain's contractual duty to pay Plaintiff, or to backstop Auditchain in the event it failed to pay Plaintiff's wages or bonuses. Nor has Plaintiff alleged fraudulent use of Auditchain's corporate form. "A corporate agent who signs a contract within the authority of his official capacity 'will not be personally bound unless there is clear and explicit evidence that the agent intended to substitute his personal liability for that of his principal or that fraud is involved.'" *Tsegaye* v. *Impol Aluminum Corp.,* No. 01-cv-5943, 2003 WL 221743, at *6 (S.D.N.Y. Jan. 302003) (*quoting In re Estate a/Gifford,* 535 N.Y.S.2d 154, 156 (3d Dep't 1998)).

Accordingly, Meyers is not personally liable for any alleged breach of the employment agreement between Plaintiff and Auditchain.

With respect to Matreya, as noted above, it was not a party to the Agreement and the Agreement defines "Company" solely as Auditchain USA, Inc. There is no mention of Matreya. Plaintiff, however, attempts to conflate Auditchain and Matreya as the "Company" in his Complaint. **"Allegations in the complaint that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness."** *Id.* (*citing Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n. 1 (2d Cir. 2013). Such is the case here.

The definition of "Company" in the Agreement takes priority over the definition made up by Plaintiff in the Complaint.

Accordingly, Meyers and Matreya must be dismissed from the Count Three Breach of Contract claim with prejudice.

**CONCLUSION**

For the reasons stated above, the Court should dismiss with prejudice the First, Second and Fourth Counts, and Meyers and Matreya with prejudice from the Third Count.

Respectfully submitted,

Dated: New York, New York
June 2, 2020

/s/ <u>Bruce G. Hart</u>
STEAMER HART LLP
30 Park Avenue, 20th Fl
New York, NY 10016
(917) 680-2722


TO:

LOANZON LLP
1345 Avenue of the Americas, 2nd Fl.
New York, New York 10105
(212) 760-1515
tristan@loanzon.com

The Prinz Law Firm, P.C.
Kristen Prinz (kprinz@prinz-lawfirm.com)
Amit Bindra (abindra@prinz-lawfirm.com)
1 East Wacker Drive, Suite 2500,
Chicago, IL 60601 P: (312) 212-4450
F: (312) 284-4822