UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER DANUSIAR,                          :

                Plaintiff,                :

          v.                                    :

AUDITCHAIN USA, INC., A DELAWARE                :          **MEMORANDUM AND ORDER**
CORPORATION, MATREYA.IO, LLC,
A DELAWARE LIMITED LIABILITY                    :          20-CV-1477 (KNF)
CORPORATION, AND JASON M. MEYERS,
INDIVIDUALLY,                                   :

            Defendants.          :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

# INTRODUCTION

Plaintiff Christopher Danusiar ("Danusiar") commenced this action against Auditchain

USA, Inc. ("Auditchain"), Matreya.io, LLC ("Matreya") and Jason M. Meyers ("Meyers"),

seeking damages and asserting the following claims against all defendants: (1) "Count I violation

of Illinois Wage Payment and Collection Act" ("IWPCA"); (2) "Count II in the alternative to

Count I violations of the New York Labor Law" ("NYLL"); (3) "Count III breach of contract";

and (4) "Count IV breach of the implied covenant of good faith and fair dealing."  Before the

Court are: (a) the defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, for an order "dismissing Counts One, Two and Four of the Complaint with prejudice,

and dismissing defendants Jason M. Meyers and Matreya.io, LLC from the entire Action with

prejudice," Docket Entry No. 32, opposed by the plaintiff; and (b) the plaintiff's letter-motion

requesting that the defendants' "new arguments raised in Reply, along with the new exhibits" be

stricken or not evaluated, Docket Entry No. 41, opposed by the defendants.

1

## FIRST AMENDED COMPLAINT

The plaintiff alleges in the first amended complaint that Meyers developed the idea for a decentralized continuous audit and reporting protocol ecosystem through Matreya, which is now branded and communicated as Auditchain.  Auditchain was incorporated in 2018, although its assets remain with Matreya.  Meyers recruited the plaintiff due to his extensive background in assurance and accounting technology to assist with the transition from Matreya to Auditchain, with the understanding that the plaintiff would be providing services to both companies.  The plaintiff asserts that his employment, effective September 5, 2018, was governed by a "Term Sheet," the employment agreement attached to the amended complaint as Exhibit A.  The plaintiff was involved in drafting and reviewing all relevant documents to transition all assets and intellectual property related to the decentralized continuous audit and reporting protocol ecosystem from Matreya to Auditchain.  All work the plaintiff performed for Matreya was performed simultaneously for Auditchain, and vice versa, and the plaintiff performed his duties "from the Company's office in New York City" and "remotely from his home in Wheaton, Illinois."  The plaintiff asserts that, as a result of the defendants' unlawful conduct, he terminated his employment with the defendants "for Good Reason effective March 20, 2019."  The plaintiff alleges that he received payments from Matreya for the first three months of his employment, after which, "the Company" subsequently failed to pay him any wages.  According to the plaintiff, the defendants: (i) "failed to pay Mr. Danusiar all of his earned wages under the Employment Agreement, including his salary, his bonus payment, and his separation pay"; (ii) "failed to reimburse Mr. Danusiar for all business expenses he incurred on Defendants' behalf"; (iii) "misclassified the plaintiff as an independent contractor"; and (iv) "owe him additional money for employment taxes Defendants failed to withhold."

Exhibit A to the first amended complaint is an employment agreement between the plaintiff and "Auditchain USA, Inc., a Delaware corporation ('Auditchain' or the 'Company')." It states that the plaintiff "shall serve in the capacity as a Director and the Chief Executive Officer for Auditchain" and his "Responsibilities" are described as follows:

> Executive shall serve as Chief Executive Officer to Auditchain and serve as a member of the board of directors ("Board"). Executive shall oversee the day to day activities of all operations of the Company and have the duties, authorities and responsibilities of persons in similar capacities in similarly sized companies. Such activities shall include overseeing the development of Decentralized Continuous Audit & Reporting Protocol EcosystemTM, the Company's decentralized assurance and reporting product in development as well as guiding the Company's overall strategic plans.  Executive shall work regularly with the Auditchain team at their physical office location(s), but can work remotely or from any Auditchain office location as desired. Executive shall report directly to the Board and all employees of the Company shall report directly to Executive (or his designee).
> The Company (and its shareholders) shall take such action as may be necessary to appoint or elect Executive as a member of the Board as of the date of Executive's commencement of employment.

The employment agreement provides, under the term "Compensation," as follows:

> During the Initial Term, Executive shall be paid a cash salary equal to: (i) no less than $225,000 during the first year following the date of Executive's commencement of employment and (ii) no less than $325,000 thereafter ("Salary"). Salary payments shall be made in monthly installments on the first day of each month.
>
> The Company plans to conduct a token generation event ("TGE") within 90 days from the date of this letter. Upon the closing of the TGE, Executive shall be paid a bonus equal to $100,000 (the "TGE Bonus"); provided that the TGE Bonus shall equal $200,000 in the event the gross aggregate proceeds generated from, or arising with respect to, the TGE equal or exceed $5 Million. An additional bonus equal to $200,000 shall be paid upon the commercial launch of the Auditchain blockchain. Executive shall be entitled to the bonuses specified in this paragraph if Executive is providing any services to the Company (whether as a member of the Board, a consultant or otherwise) as of the date of consummation of the TGE or the commercial launch of the Auditchain blockchain, respectively. Further, in the event Executive's employment or service is terminated by the Company without Cause or by Executive with Good Reason upon or with the 120 day period immediately preceding the date of consummation of the TGE or the commercial launch of the Auditchain blockchain, Executive shall be deemed employed as of the date of such event(s) and entitled to the applicable bonus(es) specified herein.

3

Executive will be entitled to participate in all employee and fringe benefit plans generally available to executives and employees of the Company.

Executive will be reimbursed for customary business expenses.

Executive shall be entitled to 2,000,000 AUDT tokens ("AUDT"). The Tokens shall vest in the following manner: (i) 500,000 equally on a per block basis over the one year period commencing from the date of the TGE, (ii) 500,000 shall vest immediately upon the date of the commercial release of the genesis block of the Auditchain blockchain ("Genesis Block"), (iii) 500,000 shall vest immediately upon the date of achievement of the first commercial customer and (iv) 500,000 shall vest immediately upon the achievement of an aggregate of $[5,000,000] in revenue within any rolling 12 month period, excluding revenue generated directly from the TGE. Executive shall be entitled to the vesting specified in this paragraph if Executive is providing any services to the Company (whether as an employee, member of the Board, consultant or otherwise) as of the date of achievement of the stated milestone, respectively. Further, in the event Executive's employment or service is terminated by the Company without Cause or by Executive with Good Reason upon or with the 120 day period immediately preceding the date of achievement of a milestone, Executive shall be deemed employed as of the date of such event(s) and entitled to the applicable vesting specified herein.
Executive shall be issued a non-qualified option to purchase 10% of the outstanding shares of common stock of Auditchain, calculated on a fully diluted basis as of the date of this Term Sheet ("Option"). The Option shall (a) have an aggregate exercise price of $[100], (b) expire ten (10) years following the date of grant, (c) vest in full upon the earlier of the commercial release of the Genesis Block and a sale of more than 50% of the equity or assets of the Company, and (d) be exercisable at any time prior to expiration. Executive will have the right to "net exercise" the Option that will allow Executive to use shares issuable upon exercise to cover the applicable exercise price and any required tax withholding. Executive shall be entitled to the vesting specified in this paragraph if Executive is providing any services to the Company (whether as an employee, member of the Board, consultant or otherwise) as of the date of commercial release of the Genesis Block. Further, in the event Executive's employment or service is terminated by the Company without Cause or by Executive with Good Reason upon or with the 120 day period immediately preceding the date of commercial release of the Genesis Block, Executive shall be deemed employed as of the date of such event and entitled to the vesting specified herein.

The section "Governing Law" of the employment agreement provides: "The Laws of the United States and the State of New York shall govern this Term Sheet." The employment agreement was signed by the plaintiff and Meyers, as Chief Executive Officer for Auditchain.

## DEFENDANTS' MOTION

The defendants argue that the plaintiff cannot state a claim: (i) under the Illinois law because his employment agreement specifically states that New York law is controlling; (ii) for violations of the NYLL's Article 6 because he does not attempt to seek relief under Section 198 of the NYLL, since no allegations exist about any specific deduction of wages and Section 198 does not provide a substantive right to relief; (iii) for breach of the implied covenant of good faith and fair dealing because it is duplicative of the breach of contract cause of action; and (iv) against Meyers and Matreya, who are not proper parties and should be dismissed from Count III because Meyers signed the employment agreement on behalf of Auditchain, not in his individual capacity or on behalf of Matreya and Matreya is not a party to the employment agreement. Concerning Count I, the defendants maintain that the employment agreement at issue contains a specific New York choice-of-law provision; thus, New York law and not Illinois law controls warranting dismissal of Count I based on Illinois law.

According to the defendants, the plaintiff alleges that the defendants violated NYLL's Article 6 by failing to pay him compensation due and owing when he resigned from Auditchain. The defendants maintain that, where the essence of the claim concerns a breach of employment contract, no viable claim exists under NYLL's Article 6.  Moreover, the plaintiff does not mention NYLL's Section 193, the NYLL's Section 198 does not provide a freestanding right to relief  without a claim under NYLL's Article 6 and, as a chief executive officer, he cannot state a claim under other provisions of NYLL's Article 6, not mentioned in his complaint.

Concerning the plaintiff's breach of the implied covenant of good faith and fair dealing, it should be dismissed pursuant to New York law, which does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of

contract cause of action based on the same facts is pleaded, such as in this case.  Moreover, the plaintiff did not assert an independent tort.

The defendants assert that Meyers and Matreya "were wrongfully included" in the breach of contract cause of action between the plaintiff and Auditchain because Meyers signed the agreement in his capacity as Chief Executive Officer of Auditchain, not in his individual capacity, and the plaintiff does not make any "claim suggesting any intent or commitment by Meyers to assume personal responsibility for Auditchain's contractual duty to pay Plaintiff, or to backstop Auditchain in the event it failed to pay Plaintiff's wages or bonuses.  Nor has Plaintiff alleged fraudulent use of Auditchain corporate form."  The defendant contends that Matreya was not a party to the employment agreement, which defines the "Company" solely as Auditchain and does not mention Matreya.  The plaintiff attempts to conflate Auditchain and Matreya in his allegations, but the definition of the "Company" in the employment agreement "takes priority over the definition made up by Plaintiff in the Complaint."  Thus, Meyers and Matreya should be dismissed with prejudice from the breach of contract cause of action.

### PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION

The plaintiff asserts that the defendants' motion is premature.  The defendants do not seek to dismiss and failed to answer Count III, a breach of contract cause of action, and resolving IWPCA or NYLL causes of action "will require fact driven choice-of-law analysis to determine whether Illinois has significant contacts to this litigation."  The plaintiff contends that Illinois law should apply, and the choice-of-law contractual provision should be rejected because "New York courts follow the RESTATEMENT (SECOND) OF CONFLICT OF LAWS and reject contractual choice-of-law provisions if its [sic] application is 'contrary to any fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the

particular issue at bar, and which would be the state of the applicable law in the absence of an effective choice of law by the parties.'"  The plaintiff asserts "that New York law does not provide adequate protections for an employee whom Defendants failed to pay several months of wages, bonus compensation, expense reimbursements, and severance."  The plaintiff contends that, since the majority of the business was conducted by the plaintiff from Illinois and the plaintiff paid taxes in Illinois, Illinois has stronger contacts and strong public policy interest to protect the plaintiff.  The plaintiff asserts that Illinois has significant contacts to the matter, and under the Illinois law "it is a violation of the state's public policy to fail to properly pay earned compensation to an employee," such as the plaintiff who worked while residing in Illinois.

Alternatively, NYLL, Sections 191, 193 and 198 apply to the plaintiff's claim for failure to pay several of his earned and guaranteed wages, bonus, severance and expenses.  The plaintiff asserts that the defendants failed to pay the plaintiff any wages for three months, "along with other guaranteed pay," and they "conflate different sections" of NYLL "to create confusion." According to the plaintiff, NYLL exempts executives only when an employer pays the employee in excess of nine hundred dollars a week, which the defendants failed to pay.  Moreover, Sections 198(3) and 193 apply to the plaintiff because they protect all employees and, since the defendants failed to pay wages, Section 191 also applies.

The plaintiff contends that Meyers and Matreya are proper defendants because they are employers under IWPCA and NYLL, and "both statutes impose individual liability."  The plaintiff conducted work for Matreya and received some, but not all, compensation from Matreya, and Meyers allowed knowingly "the Company" to fail to pay the plaintiff his salary, bonus, expenses and severance pay.

The plaintiff asserts that the breach of implied covenant of good faith and fair dealing cause of action is distinct from and in the alternative to his breach of contract cause of action because the defendants acted in bad faith by failing to pay him his earned compensation, bonus and severance pay.  Since courts have allowed alternative pleadings and the defendants did not file an answer to Count III, breach of contract, the defendants' motion regarding Count III should be denied or the plaintiff granted leave to plead Count IV in the alternative.

### DEFENDANTS' REPLY

The defendants contend that their motion is timely and "Illinois contacts with the litigation has been previously decided" in Illinois state court, as the court found no specific or general jurisdiction over the defendants and Illinois did not have sufficient contacts to the litigation.  Thus, discovery is unnecessary to resolve a "conflict-of-law" issue.  The plaintiff's "entire argument was fully briefed and argued before the Illinois Court," "the case was dismissed" and the plaintiff's motion to reconsider denied.  Since the plaintiff's employment agreement contains a specific New York choice of law provision, the action was filed in New York and "New York applies the law of the state agreed to by the parties in the contract," the action is governed by New York law.

The defendants assert that the plaintiff ignores "the governing authority regarding the applicability" of the NYLL, which "exempts him as an Executive," and that NYLL claim "is preempted by his Breach of Contract claim."  The plaintiff did not mention NYLL's Section 193 improper deductions in his first amended complaint, raised for the first time in the plaintiff's opposition to the motion, and Section 193 "has nothing to do with failure to pay wages or severance benefits."  Since the plaintiff alleges withholding of wages or severance benefits rather

8

than alleging specific deduction of wages, the plaintiff failed to state a claim under NYLL's Section 193.

The defendants maintain that the plaintiff "ignores and fails to address the well-established principles that a party to a contract must actually be named as a party, and an officer signing a contract in his official capacity is not subject to liability."  Meyers and Matreya "were wrongfully included in Count Three, which amounts to a breach of contract between Plaintiff and Auditchain," and Meyers did not sign the contract on behalf of Matreya, a non-party to the agreement.  The plaintiff did not allege intent or commitment by Meyers to assume personal responsibility for Auditchain's contractual duty to pay the plaintiff or any fraudulent use of Auditchain's corporate form.

The plaintiff failed to distinguish his cause of action for breach of the implied covenant of good faith and fair dealing from his breach of contract cause of action, of which it is duplicative.  The plaintiff admits that he failed to plead in the alternative and does not dispute that his Count IV is premised on the same facts as Count III, a breach of contract cause of action. Since Count III breach of contract is directed to all defendants, the Court's decision on this motion would determine how Auditchain will respond to Count III.  In support of their reply, the defendants submitted their attorney's declaration with Exhibit A, "the November 26, 2019 transcript in the case,  *Danusiar v. Auditchain, et al.,* 2019-L800, 18th Cir., Dupage Cty, Illinois," Exhibit B, "the November 26, 2019 Order dismissing the Action," Exhibit C, "Plaintiff's motion to reconsider the court's November 26, 2019 Order," and Exhibit D, "the Order denying the motion to reconsider and affirming the motion to dismiss."

## PLAINTIFF'S LETTER-MOTION TO STRIKE THE REPLY

The plaintiff asserts that the defendants "improperly seek to transform a Rule 12(b)(6) Motion into a Rule 56 Motion in their Reply," and he requests "that the new arguments raised in Reply, along with the new exhibit, not be considered in adjudicating the Motion."  According to the plaintiff, the defendants attempt, for the first time in their reply, to conduct a choice-of-law analysis, relying on a non-precedential decision from a state court involving personal jurisdiction and not the application of IWPCA.  The plaintiff asserts that discovery in this action "will establish both the conflict-of-law analysis and establish the proper employer. At the close of discovery, the parties can litigate the application of New York or Illinois state wage laws."

## DEFENDANTS' OPPOSITION TO THE PLAINITFF'S LETTER-MOTION

The defendants assert that they did not raise any new arguments or present new facts in their reply, but "referred to and cited Plaintiff's prior action regarding the same claims at issue in this matter to address the choice of law argument made by Plaintiff in his Response."  The state court documents attached to counsel's declaration are provided to the Court "for ease of reference."  According to the defendants, had the plaintiff not raised this argument in his response, the defendants would not have responded to it in their reply.  The plaintiff seeks improperly, through his meritless motion, to prevent the defendants from responding to an argument not made in their initial motion.

## LEGAL STANDARD

A party may assert, by motion, the defense of "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

"Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 191 (2d Cir. 2010) (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). On a motion pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor. See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

## APPLICATION OF LEGAL STANDARD

### Fed. R. Civ. P. 12(d) Matters Outside the Pleadings

In support of their reply, the defendants submitted a declaration by their attorney with exhibits. The exhibits concern a prior litigation between the parties in Illinois state court. However, the first amended complaint does not contain any allegations concerning the parties' prior litigation in Illinois state court. Since the contents of the materials contained in the defendants' reply exhibits are not referenced in the first amended complaint, they constitute matters outside the pleadings. The Court declines to consider the matters outside the pleadings

in determining the instant motion.  Therefore, the Court excludes from consideration of the
instant motion the defendants' reply declaration with exhibits and any arguments pertaining to
them in the reply.  As a result of the Court's determination not to consider the matters outside the
pleadings, in considering the defendants' Rule 12(b)(6) motion to dismiss, plaintiff's letter-
motion to strike the matters outside the pleadings and related arguments is moot.

***Count I Violation of Illinois Wage Payment and Collection Act***

Concerning Count I of the first amended complaint, the defendants assert that the
employment agreement at issue contains a specific New York choice-of-law provision; thus,
New York law and not Illinois law governs warranting dismissal of Count I based on Illinois
law.  The plaintiff asserts that the contractual choice-of-law provision should be rejected and
"Illinois law should apply" because

> New York courts follow the RESTATEMENT (SECOND) OF CONFLICT OF
> LAWS and reject contractual choice-of-law provisions if its [sic] application is
> "contrary to any fundamental policy of a state which has a materially greater
> interest than the chosen state in the determination of the particular issue at bar, and
> which would be the state of the applicable law in the absence of an effective choice
> of law by the parties."

For the purpose of the Rule 12(b)(6) motion to dismiss, the plaintiff's non-conclusory
allegations in the first amended complaint are taken as true, including that: (a) the terms of his
employment were governed by the "Term Sheet" employment agreement, attached as Exhibit A
to the first amended complaint; and (b) the employment agreement contains a term styled
"Governing Law," which states: "The Laws of the United States and the State of New York shall
govern this Term Sheet."  The plaintiff does not assert that the choice-of-law provision in his
employment agreement is ambiguous, invalid or unenforceable, and he does not challenge any of
the terms of the employment agreement which he asserts he executed and based on which he

asserts his Count III breach of contract cause of action.  The plaintiff argues only that the New

York choice-of-law contractual provision contained in the agreement governing his employment

should be rejected and Illinois law applied because "New York courts follow the

RESTATEMENT (SECOND) OF CONFLICT OF LAWS and reject contractual choice-of-law

provisions if its [sic] application is 'contrary to any fundamental policy of a state which has a

materially greater interest than the chosen state in the determination of the particular issue at

bar.'"  However, the plaintiff fails to make citation to any New York law in support of his

argument.  The plaintiff does not assert that application of New York law is "contrary to any

fundamental policy of a state which has a materially greater interest than the chosen state in the

determination of the particular issue at bar," he asserts only that "Illinois has significant contacts

and a strong public policy interest," without identifying any "fundamental policy" or "public

policy interest."  That Illinois may have "significant contacts and a strong public policy interest"

does not show that New York law is contrary to any fundamental policy of Illinois or that Illinois

"has a materially greater interest than [New York] in the determination of the particular issue at

bar."

        "A federal court sitting in diversity jurisdiction applies the choice of law rules of the

forum state."  Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433

(2d Cir. 2012).  The plaintiff argues that his IWPC claim cannot be dismissed without

conducting a necessary choice-of-law analysis.  "In New York, the forum state in this case, the

first question to resolve in determining whether to undertake a choice of law analysis is whether

there is an actual conflict of laws.  *See Matter of Allstate Ins. Co. and Stolarz,* 81 N.Y.2d 219,

223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)."  Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir.

1998).  The plaintiff does not assert that "there is an actual conflict of laws" between IWPC and

13

NYLL, and he does not identify any actual conflict between IWPC and NYLL or any other

Illinois law and other New York law; rather, he argues only that "New York law does not

provide adequate protections for an employee whom Defendants failed to pay several months of

wages, bonus compensation, expense reimbursements, and severance."  That IWPC or other

Illinois law may provide greater protection than NYLL or other New York law does not show

that "there is an actual conflict of laws" between Illinois and New York, as required to conduct a

choice-of-law analysis in this case.  Id.  The Court finds that conducting a choice-of-law analysis

is not necessary because the plaintiff did not assert any actual conflict of laws between Illinois

and New York.  Thus, the plaintiff's argument is rejected as baseless.  Since the plaintiff failed to

assert any actual conflict of laws between Illinois and New York, the Court finds that New York

law governs this action and dismissing "Count I violation of Illinois Wage Payment and

Collection Act" is warranted.

***Count II in the Alternative to Count I Violations of the New York Labor Law***

In Count II of the first amended complaint, the plaintiff asserts that: (1) NYLL "requires

Defendants to pay Plaintiff his wages 'not later than the regular pay day for the period during

which termination occurred' upon termination of Plaintiff's employment.  N.Y. Lab. Law §

191(3)" and the defendants "did not pay Plaintiff any of his earned and unpaid compensation

upon termination of his employment"; (2) Meyers is liable personally under "N.Y. Lab. Law §

191(3)"; and (3) the defendants "may be subject to liquidated damages equal to one hundred

percent (100%) of wages owed, prejudgment interest, as well as attorneys' fees and costs

expended in pursuit of the unpaid compensation owed.  N.Y. Lab. Law § 198(1-a)."  The

defendants contend that the plaintiff cannot state a claim for violations of the NYLL's Article 6

because: (i) the essence of his claim is breach of contract; (ii) he does not mention Section 193 of

the NYLL, since no allegations exist about any specific deduction of wages; (iii) Section 198 does not provide a freestanding substantive right to relief; and (iv) as an executive he cannot state a claim under other provisions of Article 6.  The plaintiff asserts that he is protected by NYLL's Sections 191, 193 and 198 because: (a) the defendants failed to pay him earned wages under Section 191; (b) he is not exempted under Section 190(7); and (c) Section 193 protects all employees, including executives; and (d) the defendants failed to pay his wages and severance under Section 198(3).

The defendants do not make citation to any New York law or binding authority in support of their argument that, "where the essence of the claim concerns a breach of employment contract, no viable claim exists under NYLL's Article 6."  Thus, the argument is rejected as unsupported and meritless.  The defendants' argument, in reply, that NYLL causes of action "are preempted by his Breach of Contract claim" is rejected as baseless because the doctrine of preemption, based on the Supremacy Clause of the United States Constitution, concerns "the different ways in which federal statutes may displace state laws," Virginia Uranium, Inc. v. Warren, 584 U.S. __, 139 S. Ct. 1894, 1901 (2019), and does not apply to the relationship between New York statutes and its common law.

"[E]xecutives are employees for purposes of Labor Law article 6, except where expressly excluded." Pachter v. Bernard Hodes Grp., Inc., 10 N.Y.3d 609, 616, 861 N.Y.S.2d 246, 250 (2008).

Section 191 of NYLL Article 6

"[E]mployees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law." Id.  That is because executives are excluded expressly from NYLL's Section 191 by virtue of the definition, acknowledged by the plaintiff, in NYLL's

Section 190(7), styled "Definitions," which provides that, "[a]s used in [Article 6] . . . 'Clerical

and other worker' includes all employees not included in subdivisions four, five and six of this

section, except any person employed in a bona fide executive, administrative or professional

capacity whose earnings are in excess of nine hundred dollars a week."  Taking the plaintiffs'

allegations as true, the plaintiff was employed as a Director and the Chief Executive Officer for

Auditchain whose salary was in excess of nine hundred dollars a week, namely, it was "equal to:

(i) no less than $225,000 during the first year following the date of Executive's commencement

of employment and (ii) no less than $325,000  thereafter."  Thus, the plaintiff is excluded

expressly from NYLL Section 191 coverage.  See Pachter, 10 N.Y.3d at 616, 861 N.Y.S.2d at

250.

> Section 193 of NYLL Article 6
>
> Section 193 prohibits an employer from making "any deduction from the wages of
> an employee" unless permitted by law or authorized by the employee for "insurance
> premiums, pension or health and welfare benefits, contributions to charitable
> organizations, payments for United States bonds, payments for dues or assessments
> to a labor organization, and similar payments for the benefit of the employee"
> (Labor Law § 193 [1] [a], [b]).
>
> Pachter, 10 N.Y.3d at 617, 861 N.Y.S.2d at 251.

Section 193 of NYLL Article 6 does not exclude executives expressly.  In his first amended

complaint, the plaintiff did not assert that the defendants made any specific "deduction from the

wages"; rather, he asserted under Count II that the defendants did not pay "any of his earned

unpaid compensation upon termination of his employment," which includes his earned unpaid

"salary, his bonus payment, and his separation pay."  The plaintiff argues that failure to pay his

earned "wages" constitutes unlawful deduction from his wages in violation of Section 193.  The

defendants did not assert that the alleged earned wages do not include unpaid salary, bonus and

separation pay or that unpaid salary, bonus and separation pay were discretionary.  The

defendants assert that "Section 193 has nothing to do with failure to pay wages or severance

benefits, governing instead the specific subject of making deductions from wages," relying on

Monagle v. Scholastic, Inc., No. 06 Civ. 14342 GEL, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9,

2007), which makes citation to Kletter v. Fleming, 32 A.D.3d 566, 567, 820 N.Y.S.2d 348, 350

(App. Div. 3d Dep't 2006).  Unlike this case, Kletter involved a "breach of contract claim that

plaintiff improperly calculated the net amount upon which his percentage fees were based," and

the court stated: "This dispute as to the calculation of the net amount does not reflect a deduction

from wages within the meaning of section 193 and, thus, the additional remedies provided by

Labor Law article 6 are not available here."  Id.  The defendants do not make citation to any New

York Court of Appeals decision in support of their argument that "Section 193 has nothing to do

with failure to pay wages or severance benefits, governing instead the specific subject of making

deductions from wages."  New York lower courts are divided on this issue, with some courts

finding that failure to pay earned wages constitutes an unlawful deduction from the wages, see, e.

g., Zinno v. Schlehr, 175 A.D.3d 843, 844, 107 N.Y.S.3d 220, 221 (App. Div. 4th Dep't 2019)

(failure to pay the plaintiff "the full amount of the additional compensation that plaintiff had

earned, as required by the parties' agreement, constituted a deduction from wages in violation of

Labor Law § 193(1)"), and other courts finding that failure to pay "the Production Bonus"

provided in the employment agreement "constitutes a 'wholesale withholding of payment,'

which is not a 'deduction' within the meaning Labor Law § 193," Kolchins v. Evolution

Markets, Inc., 182 A.D.3d 408, 122 N.Y.S.3d 288, 289 (App. Div. 1st Dep't 2020); see Perella

Weinberg Partners LLC v. Kramer, 153 A.D.3d 443, 449, 58 N.Y.S.3d 384, 390 (App. Div. 1st

Dep't 2017) ("a wholesale withholding of payment is not a 'deduction' within the meaning of

Labor Law § 193" and "[t]his issue was not addressed by the Court of Appeals in *Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 16, 945 N.Y.S.2d 593, 968 N.E.2d 947 (2012)). The New York Court of Appeals found in Ryan that, where

> bonus had been earned and was vested before he left his job at Kellogg; its payment was guaranteed and non-discretionary as a term and condition of his employment (*see Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 509 [S.D.N.Y. 1989] ["bonus payments, already due and vested . . . fall within the definition of wages in § 190"]). Since Ryan's bonus therefore constitutes "wages" within the meaning of Labor Law § 190(1), Kellogg's neglect to pay him the bonus violated Labor Law § 193 (*see Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609, 617 [2008]), and entitles Ryan to an award of attorney's fees under Labor Law § 198 (1-a).
>
> Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 16, 945 N.Y.S.2d 593, 602 (2012)

Taking as true the plaintiff's allegations that he earned his "wages," which included his salary, bonus and separation pay, and the defendants failed to pay his earned "wages," the Court finds that the plaintiff alleged sufficient factual content that allows the Court to draw the reasonable inference that the defendants are liable for violating Section 193 of NYLL Article 6.  Thus, dismissing Count II for failure to state a claim is not warranted.

Section 198 of NYLL Article 6

"[T]he remedies provided in section 198 were intended to be limited to claims based upon substantive violations of [Article 6]." Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 463, 605 N.Y.S.2d 213, 216-17 (1993).

> [T]he statutory remedy of an award of attorney's fees to a prevailing employee, as well as the liquidated damages remedy where a willful failure to pay wages has been established, are limited to actions for wage claims founded on the substantive provisions of Labor Law article 6. Moreover, any doubts on the true meaning of the

statutory language or legislative intent in the enactment of the attorney's fees provision of Labor Law § 198 should be resolved in favor of a narrow construction.

Id. at 464, 605 N.Y.S.2d at 217.

Section 198 of NYLL Article 6 does not exclude executives expressly. Since the Court finds that the plaintiff asserted sufficient factual content to state a claim for violation of Section 193 of NYLL Article 6, the availability of remedies under Section 198, if any, will depend on the resolution of the plaintiff's claim under Section 193 NYLL Article 6.

### Count IV Breach of the Implied Covenant of Good Faith and Fair Dealing

The defendants contend that Count IV alleging breach of the implied covenant of good faith and fair dealing is duplicative of and based on the same facts as Count III breach of contract cause of action, and the plaintiff has not claimed an independent tort. The plaintiff contends that his breach of implied covenant of good faith and fair dealing is distinct from and in the alternative to his breach of contract cause of action because the defendants acted in bad faith by failing to pay him his earned compensation, bonus and severance pay.

A breach of the implied covenant of good faith and fair dealing claim that is duplicative of a breach of contract claim must be dismissed. *See New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 319–20, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). A good faith claim will be dismissed as redundant if it merely pleads that defendant did not act in good faith in performing its contractual obligations. *See Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce,* 70 A.D.3d 423, 894 N.Y.S.2d 47, 49–50 (1st Dept.2010) (dismissing a good faith and fair dealing claim because it arose from the same facts as the breach of contract claims). Claims for breach of good faith and fair dealing are not duplicative when claims are not directed at all of the defendants and where claims are not predicated on contractual terms that form the basis of the breach of contract claim. *See, e.g., Forman v. Guardian Life Ins. Co. of America,* 76 A.D.3d 886, 908 N.Y.S.2d 27 (1st Dept. Sept. 21, 2010) (holding that a good faith and fair dealing claim was not duplicative because the breach of contract claim was based on a warranty provision that did not appear in the other contracts).

MBIA Ins. Co. v. GMAC Mortg. LLC, 30 Misc. 3d 856, 865, 914 N.Y.S.2d 604, 611 (Sup. Ct. 2010)

The plaintiff did not assert tort or fraud in this action. Although the plaintiff asserts in a conclusory fashion that his breach of the implied covenant of good faith and fair dealing cause of action is distinct from his breach of contract cause of action, he does not identify or explain the distinction. The Court finds that the plaintiff's allegations in Count IV, the breach of the implied covenant of good faith and fair dealing cause of action, are based on and repeat the factual allegations in his Count III breach of contract cause of action; thus, Count IV, the breach of the implied covenant of good faith and fair dealing claim, is duplicative of Count III, the breach of contract cause of action, because it pleads that the defendants did not act in good faith in performing their obligations under the employment contract. Accordingly, dismissing "Count IV breach of the implied covenant of good faith and fair dealing" is warranted.

### Whether Meyers and Matreya Are Proper Defendants in Count III Breach of Contract

The defendants assert that Meyers and Matreya are included wrongfully in Count III, the breach of contract cause of action, because: (a) Meyers signed the employment agreement in his capacity as chief executive officer of Auditchain without any intent or commitment to assume personal liability; and (b) Matreya is not a party to the employment agreement and the plaintiff did not assert fraudulent use of Auditchain's corporate form. The plaintiff did not oppose the defendants' argument that Meyers and Matreya are not proper defendants in Count III, the breach of contract cause of action, he only asserted that they are proper defendants under Count I, asserting violations of IWPCA, and Count II, asserting violations of NYLL, which the defendants did not dispute in their reply.

> It is well settled that when an agent acts on behalf of a disclosed principal on a contract, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to be so bound (*Savoy Record Co. v. Cardinal Export Corp.*, 15 N.Y.2d 1; *Mencher v. Weiss*, 306 N.Y. 1; *Hall v. Lauderdale*, 46 NY 70; *City Univ. v. Finalco, Inc.*, 93 A.D.2d 792; *Podolsky v. Equifax, Inc.*, 89

A.D.2d 585). This is so even if the agent, in the course of his agency, induces the principal to breach the contract (*Shaw v. Merrick*, 60 A.D.2d 830).

Spain v. Howard Holmes, Inc., 108 A.D.2d 741, 742–43, 485 N.Y.S.2d 87, 89 (App. Div. 2d Dep't 1985).

Taking the allegations in the first amended complaint as true, Meyers signed the employment agreement on behalf of Auditchain in his capacity as chief executive officer. The plaintiff does not allege in his first amended complaint or in opposition to the motion that Meyers signed the employment agreement in his personal capacity or acted in any manner that could evidence his intention to be bound personally by the employment agreement. Accordingly, the Court finds that dismissing Meyers as a defendant from "Count III breach of contract" is warranted.

Taking the allegations in the first amended complaint as true: (a) Matreya is not a party to and is not mentioned in the employment agreement; (b) the plaintiff performed work for Matreya and Auditchain simultaneously; (c) he received payments from Matreya for the first three months of his employment; and (d) thereafter, the plaintiff did not receive any wages from "the Company." Although the plaintiff performed work for Matreya simultaneous to performing work for Auditchain and he received payments from Matreya for three months of work performed for Matreya, the plaintiff's work for Matreya and his payments by Matreya for three months of work he performed for Matreya are not governed by the plaintiff's employment agreement with Auditchain, since Matreya is not a party to and not mentioned in the employment agreement. The plaintiff did not assert any improper use of corporate form. Since Matreya is not a party to or mentioned in the employment agreement alleged to be the basis for the plaintiff's breach of contract cause of action, the plaintiff has no basis to sue Matreya for breaching a contract to which Matreya was not a party and which does not mention Matreya.

Accordingly, the Court finds that dismissing Matreya as a defendant from "Count III breach of contract" is warranted.

**CONCLUSION**

For the foregoing reasons; (1) the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Docket Entry No. 32, is granted in part and denied in part; and (2) the plaintiff's letter-motion to strike, Docket Entry No. 41, is denied as moot.  The plaintiff's "Count I violation of Illinois Wage Payment and Collection Act" and "Count IV breach of the implied covenant of good faith and fair dealing" are dismissed from the first amended complaint, and Meyers and Matreya are dismissed as defendants only from "Count III breach of contract" in the first amended complaint.  The defendants shall file their answer to the remaining claims in the first amended complaint, namely, Count II violations of NYLL against all defendants and Count III breach of contract against Auditchain, on or before October13, 2020.  The defendants' letter-motion for an extension of time to file their answer, Docket Entry No. 31, is denied as moot.

Dated: New York, New York                       SO ORDERED:
      October 4, 2020

                                                _Kevin Nathaniel Fox_
                                           KEVIN NATHANIEL FOX
                                           UNITED STATES MAGISTRATE JUDGE